**WINN–DIXIE MONTGOMERY, INC.,**
a corporation, Plaintiff,

v.

**BRINKS, INCORPORATED, Defendant.**

**Civ. A. No. 2605–N.**

United States District Court
M. D. Alabama, N. D.

June 14, 1968.

Robert S. Lamar, Jr., and Kenneth E. Vines, of Ball & Ball, Montgomery, Ala., for plaintiff.

Jesse M. Williams, Jr., of Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHNSON, Chief Judge.

This is an action to recover $14,134.00, plus interest and costs, due to the loss of the contents of two deposit bags delivered by Winn-Dixie Montgomery, Inc., to Brinks, Incorporated for delivery to The First National Bank of Montgomery, Alabama. The case was tried by the Court without a jury and is now submitted upon the evidence, consisting of the testimony of several witnesses—both oral and by deposition—and the exhibits thereto, and the briefs and arguments of the parties.

Brinks, Incorporated was, and continues to be, engaged in the business of operating in the Montgomery, Alabama, area an armored car service for hire. Winn-Dixie Montgomery, Inc., operates several large "Super-Market" type grocery stores in the Montgomery area and as such was a regular depositor of funds in The First National Bank of Montgomery, Alabama. Winn-Dixie as of November 1, 1944, contracted with Brinks whereby Brinks agreed to transport for hire Winn-Dixie's money to The First National Bank of Montgomery. The pertinent provisions of the contract are as follows:

"1. First party [Brinks] agrees to call for sealed shipments containing moneys, checks, and/or securities, to receipt therefor, and to deliver same in like condition to a designated consignee."

\* \* \* \* \* \*

"3. First party [Brinks] agrees to assume entire liability for any loss of any shipment up to the amount of FIFTY THOUSAND Dollars ($50,-000.00). Said liability shall commence when said shipments have been received into its possession and shall terminate when same have been delivered to the designated consignee; provided, however, that in case any shipment is delivered to first party not distinctively and securely sealed, said first party shall in no event be liable for any shortage claimed in any such shipment.

"4. First party [Brinks] shall not be liable for non-performance or delays not caused by its fault or neglect, nor for non-performance or delays caused by strikes, lockouts or other labor disturbances, riots, authority of law, acts of God or means beyond its control; but first party agrees to be liable for the safety of any sum of money, checks, and/or securities received into its possession at any time up to the amount stated in section three (3) hereof."

On December 3, 1966, Brinks, acting through one of its messengers, James Travis Flowers, Jr., secured from Winn-Dixie store No. 521, Montgomery, Alabama, two sealed bags containing $5,572.-08 and $9,750.00, respectively. These bags were consigned to be delivered to The First National Bank for deposit to Winn-Dixie's account. According to custom, and since December 3, 1966, was on a Saturday—a day the bank was closed—the bags were put in Brinks' vault for safe-keeping over the weekend. The store manager of Winn-Dixie store No. 521 discovered Saturday night that there was possibly an error of some 60 cents in the deposits, and on Sunday, December 4, 1966, the store bookkeeper called the messenger Flowers and requested that he return the bags for rechecking before

they were delivered to the bank Monday morning. On Monday, December 5, 1966, Flowers, apparently forgetting the request to return the bags to Winn-Dixie store No. 521, delivered the two bags to the bank and obtained a receipt therefor. A short while later and still on Monday morning, December 5, 1966, Flowers remembered the request and returned to the bank and picked the bags up, as they had not yet been opened by the teller. These bags were delivered by Flowers to Winn-Dixie store No. 521, the contents were verified, and the bags were returned to the custody of Flowers for deposit with The First National Bank of Montgomery. When Flowers left Winn-Dixie store No. 521 on Monday, December 5, 1966, he took with him the two deposit bags, one containing the $5,572.08 and the other containing $9,-750.00, and two additional bags for deposit to Winn-Dixie's account with The First National Bank of Montgomery. One of these additional bags contained $7,668.33 and the other, $2,837.54; these last two bags represented the moneys taken in by Winn-Dixie store No. 521 on Saturday night, December 3, 1966. Winn-Dixie thereafter received a deposit slip and credit to its account in The First National Bank of Montgomery for all of these deposits except the $9,750.00, for which it did not receive credit.

On December 12, 1966, plaintiff's store known as Kwik-Chek store No. 464 delivered to Brinks' messenger Flowers a deposit bag containing $4,384.00 in cash and $2,064.89 in checks—a total of $6,448.89. Winn-Dixie never received a deposit slip for credit in its account from The First National Bank for the cash portion of this deposit. The check portion of this deposit was later found by other employees of Brinks in the glove compartment of the Brinks truck and was eventually turned in to the bank, where it was properly credited to Winn-Dixie's account. As to this aspect of the case, Flowers testified that on December 13, 1966, he found a stack of checks in the Brinks truck, with an adding machine tape along with them, the whole bundle

being secured by a rubber band. He states that he counted the checks and found that there were 83 of them. He then made an entry in a book carried by the Brinks truck, the entry purporting to be a receipt from The First National Bank of Montgomery for 83 checks in the amount of $2,064.89. Flowers testified that he did not know to whom the checks belonged, although he knew that they should be deposited with The First National Bank. He stated that he put the checks in the glove compartment of the Brinks truck and forgot about them. On December 21, 1966, Moseley, Brinks' Montgomery office manager who was then working on the truck as a messenger in Flowers' absence, discovered the checks in the glove compartment of the Brinks truck. Flowers was admitted to a Montgomery hospital on December 20, 1966, and is no longer employed by Brinks.

The evidence reflects that, when Brinks would deliver to The First National Bank deposits such as are involved in this case, the usual procedure that was followed was for the Brinks messenger to deliver the sealed bags to the appropriate bank teller. The teller would give the Brinks messenger a receipt for each bag prior to verifying the contents of the bag. The teller would then sometime later clear the contents of each bag; if the bag contained checks only, he would make a deposit receipt for the amount shown on the customer's deposit slip, place the receipt in the empty bag, and put the empty bag in another portion of his cage. The checks would then be sent to the proof department. If the bag contained cash only, the teller would count the cash, make out a deposit receipt for the amount he counted, place the empty bag with the deposit slip in it in another part of his cage, and send the cash ticket to the proof department for credit on the customer's account. If the bag contained both cash and checks, he would count the cash and make out a deposit receipt for the total amount of cash counted and also for the total amount of the customer's checks,

place the deposit slip in the empty bag, and put the bag in the empty bag pile. The check portion of the deposit would go to the proof department along with the customer's deposit slip and a cash ticket made out by the teller showing the amount of cash he had received and counted. Immediately after it had been counted, all the cash taken from the bags by the teller was placed in the cash drawer in his cage. The teller for The First National Bank who receipted for the deposits in question stated that on both December 5, 1966, and December 12, 1966, he checked out all the bags that Brinks delivered before the close of business on those days and that he did not process either of the two missing deposits.

■■■ This Court finds from the credible evidence in this case that the contents of the two shipments involved were never delivered to The First National Bank of Montgomery, but were lost, stolen, or else disappeared while in Brinks' possession. The credible evidence presented to this Court on behalf of Winn-Dixie clearly establishes that it delivered the deposits in question into the possession of the Brinks messenger Flowers and that as far as Winn-Dixie is concerned the deposits were lost by Brinks. Brinks as a bailee for hire had a duty under its contract, as that contract is governed by the applicable law, to exercise reasonable care in the protection of property delivered to it. Aircraft Sales & Service, Inc. v. Bramlett, 254 Ala. 588, 49 So.2d 144. In an action such as is now before this Court for the loss of goods, a prima-facie case is established by proof that the contract carrier or bailee for hire received the goods for transportation and failed to deliver them safely. Southern Railway Company v. Levy, 144 Ala. 614, 39 So. 95. Once a prima-facie case is established, the burden then shifts to the defendant—in this case to Brinks—to show that it used due care and diligence, Louisville & Nashville Railroad Company v. Finlay, 233 Ala. 128, 170 So. 207. There is a real practical purpose for these controlling legal principles. A bailee usually has the sole, actual and exclusive possession of the goods, and if the goods are lost or if they disappear in some way, knowledge as to the loss or disappearance is exclusively in the bailee; therefore, the law imposes upon the bailee the burden of showing that he exercised that degree of care required by the nature of the bailment. Failure to discharge this burden constitutes negligence. In this case this Court cannot find from the credible evidence that Brinks, Incorporated used due care and diligence in handling the deposits in question. To the contrary, the evidence in this case reflects that Brinks did not use the necessary care and diligence in handling the deposits in question and that Winn-Dixie Montgomery, Inc., is entitled to a judgment.

Accordingly it is the order, judgment and decree of this Court that Winn-Dixie Montgomery, Inc., a corporation, have and recover of Brinks, Incorporated, the sum of $14,134.00, plus interest. It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against Brinks, Incorporated, for which execution may issue.